UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X
                                                     :
JESSICA MANN,                                        :
                                                     :
                              Movant,                :
                                                     :
                    v.                               :
                                                     :
UNITED STATES OF AMERICA,                            :
                                                     :
                              Respondent.            :
                                                     :
----------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED:  October 11, 2016        │
└─────────────────────────────────────┘
```

16 Civ. 7556 (KPF)
15 Cr. 667-4 (KPF)

OPINION AND ORDER

     Jessica Mann was arrested in October 2015, and consented to the filing of an information that same month that charged her with conspiracy to commit wire fraud and with the substantive offense of wire fraud. On October 19, 2015, Mann pleaded guilty to both counts of the information, pursuant to a plea agreement with the Government in which she, among other things, waived her right to appeal or to otherwise challenge components of her sentence under certain circumstances. Over the course of proceedings held on April 22, 2016, and May 19, 2016, Mann was sentenced principally to concurrent terms of imprisonment of one year and one day. On September 26, 2016, the Court received a motion from Mann that sought to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255; in it, Mann claimed errors in the calculation of her Guidelines range and in the assessment of a restitution figure. For the reasons set forth in the remainder of this Opinion, the motion is denied.

## BACKGROUND

### A.    Factual Background[1]

Jessica Mann was one of 14 individuals prosecuted for their conduct at the debt collection company 4 Star Resolution LLC and several related entities (collectively, "4 Star").   (PSR ¶ 11).   Investigations by civil and criminal authorities revealed that, from at least 2010 through February 2015 — when 4 Star was shut down by the Federal Trade Commission and the New York State Attorney General — debt collectors at 4 Star routinely tricked and coerced thousands of victims across the United States (including victims in this District) into paying millions of dollars in consumer debts through a variety of false statements and false threats.   (PSR ¶ 16).   From January 2010 through November 2014, the Company collected more than $31 million from thousands of victims across the United States.   (*Id.*).

Mann was employed at 4 Star from June 2013 until February 2014 (PSR ¶ 22), where she quickly rose to become part of the "Elite Team," which employed particularly appalling collection tactics (PSR ¶ 15).   For example, in an effort to fraudulently induce victims into paying purported debts, Mann knowingly misrepresented to victims over the telephone, among other things, that the "allegation" of passing a bad check would "go[] out to the county," and

---

[1]    The facts set forth in this section are derived from the Offense Conduct section of the Presentence Investigation Report ("PSR") prepared in connection with Mann's sentencing (*see* PSR ¶¶ 10-27); and from information obtained by the Court in presiding over this matter for the past year, including information obtained in the course of obtaining pleas from and/or sentencing Mann and several of her co-defendants.

that the consumer had defrauded a financial institution.   (PSR ¶ 23).   Mann

also made the following false statements, among others, to consumer victims:

- When asked whether she was calling on behalf of a collection agency, Mann falsely stated, "This is a litigation firm."

- She also stated, "Unfortunately this isn't something to do with a debt; this is in regards to a bad check that [the victim] issued."

- She threatened victims with arbitration: "If you're dealing with it voluntarily, you'd have to deal with it here in arbitration, in our company, I can transfer you over."

- She also advised victims that 4 Star "fill[s] out an affidavit with the allegation of a bad check and saying you defrauded them because they're a financial institution by taking this loan and not paying it back per your contract. They do that because it helps their civil case."

- She claimed that 4 Star was "seeking an affidavit going to the county of the bad check as well as a deposition to go to civil court."

(*Id.*).   Mann was among the most successful of the debt collectors at 4 Star,

realizing approximately $360,000 in collections during her comparatively short

time there. (PSR ¶ 25).

## B.   Procedural Background

### 1.   The Information

Rather than proceed by indictment, Mann consented to the filing of an

information, S2 15 Cr. 667 (KPF) (the "Information"), which filing took place on

October 19, 2015.   (Dkt. #12; PSR ¶¶ 1-3).   Count One of the Information

charged Mann with conspiring to commit the offense of wire fraud, in violation

of Title 18, United States Code, Section 1349; and Count Two charged Mann

3

with the substantive offense of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2.   (*Id.*).

### 2.   Mann's Guilty Plea

#### a.   The Plea Agreement

That same day, Mann pleaded guilty to Counts One and Two of the Information, pursuant to a plea agreement with the Government dated October 8, 2015 (the "Plea Agreement" or "Plea Agmt."). (PSR ¶ 6; *see also* Plea Agmt.). Among other provisions, Mann agreed (i) to forfeit "all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts One and Two of the Information" and (ii) "to make restitution in an amount ordered by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664."   (Plea Agmt. 2).

In the Plea Agreement, the parties stipulated to certain facts yielding a range under the November 1, 2014 edition of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 63 to 78 months' imprisonment. (PSR ¶ 6; Plea Agmt. 3-4).   However, the parties recognized that amendments to the Guidelines that were due to become effective November 1, 2015, would reduce Mann's Guidelines range to 41 to 51 months' imprisonment, and the parties agreed that they would ask the Court to sentence her within that range. (Plea Agmt. 3-4).   The original Guidelines range was based on an offense level of 22 and a Criminal History Category of IV; this included a twelve-level enhancement to Mann's offense level because the loss figure attributable to her

4

conduct alone (i.e., with no consideration given to the losses generated by her co-conspirators) was "more than $200,000 but less than $400,000." (Plea Agmt. 3). The post-amendment Guidelines range contemplated an offense level of 18 and a Criminal History Category of IV.[2] Of significance to the present motion, the Guidelines stipulations between the parties did not include a reduction for a mitigating role pursuant to U.S.S.G. § 3B1.2. (*See generally id.* at 3-4).

The Plea Agreement also contained the following waiver language:

> It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 41 to 51 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. . . . The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $6,000, and the Government agrees not to appeal any fine that is greater than or equal to $60,000.

(Plea Agmt. 5).

---

[2]     Mann was assessed criminal history points for a federal conviction for conspiring to distribute and possess with the intent to distribute controlled substances; a federal conviction for maintaining a drug-involved premises; and a state conviction for providing false written statements to law enforcement. (PSR ¶¶ 47-49). Mann was also assessed two criminal history points because she was on supervised release at the time she committed the instant offense. (PSR ¶ 51).

### b.   The Plea Proceeding

Mann appeared before the Court on October 19, 2015, for her presentment on the Information, her arraignment on the charges, and her guilty plea.   (Transcript of Plea Proceeding dated October 19, 2015 ("Plea Tr.")). At the outset of the plea proceeding, the Court (i) admonished Mann to advise the Court if she did not understand any part of the plea proceeding; (ii) had Mann placed under oath; and (iii) advised Mann that as a consequence of being placed under oath, any false answers she provided could subject her to a separate prosecution for perjury.   (Plea Tr. 11-12).   Mann indicated that she understood.   (*Id.* at 12).

The remainder of the plea allocution comported with the requirements of Rule 11 of the Federal Rules of Criminal Procedure.   Rather than recapitulate it fully, the Court will instead focus on those portions of the allocution that are implicated by the instant motion.   With respect to the Guidelines, the Court first confirmed that Mann understood what the Guidelines were; that they were advisory; and that they would be one of several factors considered by the Court at sentencing.   (Plea Tr. 31-32).

The Court then proceeded to review the Plea Agreement with Mann. Mann testified she had read and "fully underst[oo]d" the Plea Agreement before she signed it.   (Plea Tr. 33-34).   The Court reviewed with Mann certain provisions of the Plea Agreement, including her admission to the forfeiture allegation in the Information, her consequent obligation to forfeit assets

6

obtained on account of her fraudulent conduct, and her agreement to make restitution in an amount to be determined later.   (*Id.* at 34-35).

The Court then addressed the Guidelines stipulations between the parties — to which, the Court indicated, the parties were bound, but not the Court.   (Plea Tr. 35-36).   It then reviewed with Mann the waiver provisions of the Agreement, including the provision in which Mann waived her right to "to appeal or to bring a collateral challenge to a term of imprisonment that is less than or equal to the stipulated guidelines range of 41 to 51 months' imprisonment."   (*Id.* at 36).   The Court asked if Mann understood that, by her waiver, "if I were to sentence you to a term of imprisonment of 51 months or fewer, you would not appeal or challenge or file a motion for a sentence modification under Section 3582(c) of this provision, this component of your sentence," and Mann agreed.   (*Id.* at 36-37).

Mann acknowledged that the Plea Agreement "constitute[d her] complete and total understanding of the entire agreement between [Mann] and the Government," and, further, that she had not been "promise[d]" anything, "offered any inducement," "threatened," or "forced" to enter into the Plea Agreement or to plead guilty.   (Plea Tr. 37-38).   She further stated that no one "made any promise to [her] as to what [her] ultimate sentence will be."   (*Id.* at 38).

The Court then asked Mann to state what she did that made her guilty of the offenses charged in Counts One and Two of the Information.   (Plea Tr. 38). Mann stated, in part,

> Between 2013 and 2015 I agreed, with others, to make false statements concerning balances owed on various debts in an effort to collect the debt.   I telephoned people who lived in various parts of the United States including the Southern District of New York.   I falsely told them I was calling from a law firm and unless they paid their debts, the matter would be referred to prosecution.   And I knew my conduct was illegal.

(*Id.* at 38-39).

At the conclusion of the proceeding, the Court accepted Mann's plea of guilty and set the matter down for sentencing.   (Plea Tr. 42-45).

### 3.    Mann's Sentencing

### a.    The Presentence Investigation Report

In its Presentence Investigation Report, the Probation Office used the November 2015 edition of the Guidelines, and, as the parties had predicted in the Plea Agreement, concluded that the adjusted offense level was 18 and Mann's Criminal History Category was IV, yielding a Guidelines range of 41 to 51 months' imprisonment.   (PSR ¶¶ 32-52).   In this regard, the Probation Office found that used the loss caused by Mann was more than $250,000 but less than $550,000, resulting in a twelve-level enhancement.   (PSR ¶ 36 (offense level calculation); *see also* PSR ¶ 25 ("The loss amount attributable to MANN's own conduct — in other words, the amount of money she successfully solicited from victim consumers — was approximately $360,000.")).

8

The Probation Office recommended a downward variance from the applicable Guidelines range, and a sentence of imprisonment of concurrent terms of 30 months' imprisonment on Counts One and Two.   (PSR at 28, Sentencing Recommendation).

### b.      The Sentencing Proceedings

Sentencing took place before the Court in two parts, the first of which occurred on April 22, 2016.   (*See* Transcript of Proceedings of April 22, 2016 ("April Sent. Tr.")).   After speaking with Mann and her counsel, the Court confirmed that the defense had offered clarifications, but no objections, to the information in the Presentence Investigation Report.   (April Sent. Tr. 4).   The Court then discussed with the parties the need for a delay in imposing the sentence, so that the parties could resolve certain issues relating to the calculation of restitution and forfeiture figures.   (*Id.* at 6-10).   Ultimately, the Court agreed to defer those issues to a later telephonic proceeding, and allocuted Mann as to her waiver of her right to be present in person for that proceeding.   (*Id.* at 9-10).

The Court then addressed various questions to the parties concerning issues raised in their submissions.   First, it discussed with defense counsel Mann's health issues (April Sent. Tr. 10-12), her substance abuse history (*id.* at 13), and the life events that may have led her to engage in criminal conduct (*id.* at 13-15).   It then addressed with both sides its concern that the loss figure attributable to Mann had in fact been understated:

> I don't quite understand how the parties have
> determined that she should only be tagged with the
> money that she herself was responsible for raising.
> Because it seems to me that the other money — I am
> not saying $31 million, but I am saying something north
> of $300,000 — was reasonably foreseeable to her and
> within the scope of her agreement.

(*Id.* at 16; *see also id.* at 15-18, 20-24).   The Court then addressed with

defense counsel certain child custody issues involving Mann (*id.* at 25-27), and

information concerning her criminal history (*id.* at 27-28).

The Court heard sentencing presentations from counsel for each side.

(April Sent. Tr. 29-33).   Mann was also given an opportunity to speak in

connection with her sentencing.   (*Id.* at 33).   The Court then took a recess to

consider the appropriate sentence to impose.   When it returned, it outlined

facts and circumstances it had considered in arriving at a sentence.   In

calculating the Guidelines, the Court adopted the calculations put forth by the

Probation Office.   (*Id.* at 36).   In so doing, however, the Court made clear that

it "went with the parties on the loss figure here on the theory that while I do

think [Mann] knew of more loss, I can't say with certainty that it was enough to

bring her into the next category."   (*Id.*).

As for the term of imprisonment, the Court strove to balance "the very

serious circumstances of [Mann's] upbringing and of her adult life and how

they may have impacted what she did" (*id.* at 37), with the facts that "the

offense in this case . . . took place over a period of years, where [Mann] was

part of what was known as the 'Elite Team' and where, very disturbingly, she

10

was preying on classes of people that were in worse shape than she" (*id.* at 38). In the middle of the Court's presentation, the defense clarified one issue and Mann made a supplemental statement in mitigation of sentencing.   (*Id.* at 40-43).

The Court then proceeded to announce its intent to impose a substantially-below-Guidelines sentence on Mann, principally comprising concurrent terms of one year and one day's imprisonment on Counts One and Two.   (April Sent. Tr. 43-44, 47).[3]   The term of imprisonment would be followed by concurrent terms of three years' supervised release.   (*Id.* at 43, 47). The Court would not impose a fine, and deferred imposition of forfeiture and restitution amounts.   (*Id.* at 47).   At the conclusion of the April sentencing proceeding, the Court spoke with Mann, noting in part that it was "thinking at this point about the victims as much as [it was] thinking about your life and background."   (*Id.* at 50).   The Court also advised Mann that, to the extent that she had not waived her rights in any agreement with the Government, she had the right to appeal from her conviction and sentence.   (*Id.* at 48).

Sentencing resumed on May 19, 2016, with counsel for the parties and Mann appearing by telephone.   (*See* Transcript of May 19, 2016 Telephonic Sentencing Proceeding ("May Sent. Tr.")).   The Court learned from the parties

---

[3]      In her Section 2255 Motion, Mann suggests that her sentence is "24 months and two days."   (Dkt. #264 ("Motion") at 2).   While this is the sum of the two sentences, the Court imposed the terms to run concurrently, rather than consecutively.   (*See* Amended Judgment dated June 21, 2016 (Dkt. #192) at 2).

that "in light of the many victims in this case and the difficulty in ascertaining the sum total and the identities of all these victims[, . . .] the government [wa]s not seeking for [the Court] to impose restitution but rather seeking for [the Court] to enter a preliminary order of forfeiture with respect to a money judgment." (May Sent. Tr. 3). The Court agreed, and imposed forfeiture on Mann in the amount of $180,993.20, which accorded with a Consent Order of Forfeiture executed by the parties. (*Id.* at 6; Dkt. #165). The Court also reimposed the other terms of the sentence that it had imposed the preceding month. (May Sent. Tr. 5-6).

An amended judgment of conviction was entered on June 21, 2016. (Dkt. #192). The Court did not immediately order Mann to be remanded, but rather allowed her to surrender to the Bureau of Prisons on September 19, 2016. (*Id.*).

### 4.    The Section 2255 Motion

Mann did not appeal from her conviction or sentence. Instead, on September 23, 2016, Mann submitted an "Abridge[d] Motion to Vacate[,] Set Aside Criminal Conviction and Sentence," pursuant to Title 28, United States Code, Section 2255. (Dkt. #264). In it, Mann advances two types of claims: first, she seeks a reduction in sentence because of Amendment 794 to the Guidelines, which provided clarification concerning the circumstances in which a mitigating role adjustment would be appropriate under U.S.S.G. § 3B1.2 (Motion 5-8), and second, she claims that the restitution amount (and, it would

appear, the adjustment to her offense level attributable to the loss amount)
were flawed because the Government was unable to prove the actual amount of
loss and the Probation Office's loss figure was based on "very conclusory
speculations" (*id.* at 9).

## DISCUSSION

**A.    Applicable Law**

**1.    Section 2255 Motions Generally**

Because Mann is a *pro se* movant, her submission has been evaluated
using "less stringent standards than formal pleadings drafted by lawyers."
*Ferran* v. *Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (internal citation
omitted).   The Court has construed Mann's submissions "liberally and
interpret[ed] them to raise the strongest arguments that they suggest."
*McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation
marks and citation omitted).

A prisoner in federal custody may seek to have her sentence vacated, set
aside, or corrected on the grounds that it "was imposed in violation of the
Constitution or laws of the United States, or that the [trial] court was without
jurisdiction to impose such sentence, or that the sentence was in excess of the
maximum authorized by law, or is otherwise subject to collateral attack."   28
U.S.C. § 2255(a).   However, the grounds for such a collateral attack under
Section 2255 are much more limited than those available on a direct appeal.
*See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).   Relief may lie "only

13

for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

In the specific context of Guidelines errors, unless such errors by the sentencing court are constitutional or jurisdictional, "absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal."  *Graziano* v. *United States*, 83 F.3d 587, 588-89 (2d Cir. 1996) (collecting cases); *see generally Morales* v. *United States*, 143 F.3d 94, 96 (2d Cir. 1998) (per curiam) ("It is well established that § 2255 is not intended to provide a remedy for 'all claimed errors in conviction and sentencing.'" (quoting *Addonizio*, 442 U.S. at 185)).

## 2.    Developing the Record in Section 2255 Motions

In ruling on a motion under 28 U.S.C. § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also, e.g.*, *Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir. 2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of motions that present facially valid claims).   That said, the filing of a Section 2255 motion does not automatically entitle the movant to a hearing, as, for example, in instances in which a movant's allegations are "vague, conclusory,

14

or palpably incredible." *Machibroda* v. *United States*, 368 U.S. 487, 495

(1962).   Rather, it is within the district court's discretion to determine the

scope and nature of a hearing.   *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d

Cir. 2001) ("It was, therefore, within the district court's discretion to choose a

middle road that avoided the delay, the needless expenditure of judicial

resources, the burden on trial counsel and the government, and perhaps the

encouragement of other prisoners to make similar baseless claims that would

have resulted from a full testimonial hearing.").

To warrant a hearing, the movant "must set forth specific facts supported

by competent evidence, raising detailed and controverted issues of fact that, if

proved at a hearing, would entitle [her] to relief."   *Gonzalez* v. *United States*,

722 F.3d 118, 131 (2d Cir. 2013).   In this regard, "[t]he procedure for

determining whether a hearing is necessary is in part analogous to … a

summary judgment proceeding….   If material facts are in dispute, a hearing

should usually be held, and relevant findings of facts made."   *Puglisi* v. *United

States*, 586 F.3d 209, 213 (2d Cir. 2009).   A court need not, however, credit

factual assertions contradicted by evidence in the record of the underlying

proceeding.   *Id.* at 213-14.   Moreover, "when the judge who tried the

underlying proceedings also presides over a § 2255 motion, a full-blown

15

evidentiary hearing may not be necessary." *Raysor* v. *United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Puglisi*, 586 F.3d at 214-15).[4]

In determining whether the assertions in a Section 2255 motion warrant discovery or a hearing, the court must take into account admissions made by the defendant at her plea hearing, for "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977). "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

Ultimately, if it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas petitioner is not entitled to relief, "the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings.

## B.   The Court Denies Mann's Section 2255 Motion

### 1.   Mann's Claims Are Barred by Her Knowing and Voluntary Waiver

Preliminarily, Mann is barred from seeking relief under 28 U.S.C. § 2255 because she knowingly and voluntarily waived her right to "bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 ... of any sentence within or below the Stipulated

---

[4]     Similarly, the filing of a motion does not automatically entitle the movant to discovery. *See* Rule 6(a), Rules Governing Section 2255 Proceedings (stating that a movant is entitled to undertake discovery only when "the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise").

Guidelines Range of 41 to 51 months' imprisonment." (Plea Agmt. 5). Mann was allocuted on this specific waiver provision at the time of her guilty plea, and confirmed to the Court that she understood the provision to mean that if the Court were to sentence her to "a term of imprisonment of 51 months or fewer, [she] would not appeal or challenge . . . this component of [her] sentence." (Plea Tr. 36-37).

"[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley* v. *United States*, 523 U.S. 614, 621 (1998) (internal citations omitted); *see also United States* v. *Rosa*, 123 F.3d 94, 97 (2d Cir. 1997) ("[A] defendant's knowing and voluntary waiver of [her] right to appeal a sentence within an agreed guideline range is enforceable." (collecting cases)).

A waiver is "knowing" if the "defendant fully understood the potential consequences of [her] waiver." *United States* v. *Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). In making that determination,

> the district court [is] entitled to rely upon the defendant's sworn statements, made in open court ..., that [she] understood the consequences of [her] plea, had discussed the plea with [her] attorney, knew that [she] could not withdraw the plea, understood that [she] was waiving [her] right to appeal a sentence below [the agreed-upon time], and had been made no promises except those contained in the plea agreement. See *Blackledge* v. *Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *see also United States* v. *DeJesus*, 219 F.3d 117, 121 (2d Cir.

17

> 2000) (per curiam) (rejecting the defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy), *cert. denied*, 531 U.S. 1001, 121 S.Ct. 502, 148 L.Ed.2d 472 (2000); *United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

*United States* v. *Hernandez*, 242 F.3d 110, 112-13 (2d Cir. 2001).

An appeal waiver is presumptively enforceable; only in very limited circumstances, such as a violation of a defendant's Sixth Amendment right to counsel or the Government's breach of the plea agreement, will it be found unenforceable.   *United States* v. *Coston*, 737 F.3d 235, 237 (2d Cir. 2013) (per curiam).

The record makes plain that Mann was fully allocuted concerning — and, more importantly, understood — the waiver of her right to challenge a term of imprisonment within or below the Guidelines range.   What this means is that Mann's challenges to her term of imprisonment sentence are barred by her waiver.   As set forth later in this Opinion, the challenges also fail on the merits.

### 2.    Mann's Claims Are Procedurally Barred

Even were Mann's challenges to her term of imprisonment not barred by her waiver — and here they are — she would still be procedurally barred from raising them in a Section 2255 motion.   "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the

18

courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"   *Yick Man Mui* v. *United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak* v. *United States*, 59 F.3d 296, 301 (2d Cir. 1995), *abrogated on other grounds by Mickens* v. *Taylor*, 535 U.S. 162 (2002)).   Of note here, one rule "prevents [Section 2255] claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice."   *Id.* at 54 (collecting cases).   Mann has not demonstrated cause or prejudice for her failure to raise these claims on direct appeal, nor has she demonstrated that she is actually innocent of the offenses to which she pleaded guilty.   *See United States* v. *Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (discussing "actual innocence" exception to procedural bar).   For this reason as well, her claims fail.[5]

### 3.   Mann's Challenges Fail on the Merits

#### a.   Mann Is Not Entitled to Resentencing Based on Amendment 794

Mann first seeks a resentencing or sentence reduction pursuant to Amendment 794 to the Guidelines, which was effective as of November 1, 2015. In relevant part, Amendment 794 modified Application Notes 3, 4, and 5 to U.S.S.G. § 3B1.2 so that they now read as follows:

---

[5]    The procedural bar issue outlined in the text would not, on its own, prevent Mann from filing a motion for modification of sentence pursuant to 18 U.S.C. § 3582(c)(2), which, broadly speaking, permits such motions where amendments to the Guidelines that post-date sentencing are found to be retroactively applicable.   However, a motion under § 3582(c)(2) would fail for other reasons, including in particular the fact that Mann was sentenced in accordance with the 2015 Guidelines.

3. <u>Applicability of Adjustment</u>. —

(A)   <u>Substantially Less Culpable than Average Participant</u>. — This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. . . .

Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline. For example, a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline.

(B) <u>Conviction of Significantly Less Serious Offense</u>. — If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense. . . .

(C)   <u>Fact-Based Determination</u>.—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

20

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

4. <u>Minimal Participant</u>. — Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity.   It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

5. <u>Minor Participant</u>. — Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

U.S.S.G. § 3B1.2, comment. nn.3-5.

In her Motion, Mann repeatedly seeks retroactive application of this

amendment (and, by extension, a Guidelines range that included a downward

adjustment for mitigating role); in so doing, she fails to recognize that this version of U.S.S.G. § 3B1.2 and its application notes was in effect at the time of sentencing, and thus was the version used by both the Probation Office and the Court.   (*See* PSR ¶ 32 ("The 2015 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level."); April Sent. Tr. 36 (adopting the Guidelines calculations set forth in the Presentence Investigation Report)).   Moreover, both counsel and Mann were aware at the time of Mann's plea of amendments to the Guidelines that would become effective a few weeks after the plea proceeding.   Indeed, the amendments were cited as the basis for a lower Stipulated Guidelines Range. (*See* Plea Agmt. 3-4 (pegging Stipulated Guidelines Range to "amendments to the [Guidelines] that will become effective November 1, 2015 absent Congressional action to the contrary")).   It is inconceivable to the Court that either counsel was unaware of Amendment 794 at the time of Mann's plea.

In any event, on this record, the Court would not have imposed a minor role adjustment under U.S.S.G. § 3B1.2.   The factors set forth in Application Note 3(C) cut both ways for this defendant.   Mann did not plan the fraudulent scheme, nor did she supervise others at 4 Star.   However, Mann fully understood the scope and structure of the scheme.   (Plea Tr. 38-41; April Sent. Tr. 40-42).   She also excelled at the scheme to such a degree that she was made a member of the Elite Team, in the course of which she made egregious false statements to victims regarding, among other things, civil and

criminal penalties to which they might be subject.   (*See* PSR ¶ 23).   And her success in collections put her at the forefront of the Team, realizing some $360,000 from victims in less than one year — a figure that directly impacted her salary.   (PSR ¶ 25; *see also* April Sent. Tr. 22 (proffer from defense counsel that Mann was paid an hourly wage, plus an 8% commission on what she collected)).   Taking these facts together, and finding Mann not to be "substantially less culpable than the average participant in the criminal activity," U.S.S.G. § 3B1.2, comment. n.3(A), the Court did not believe then, and does not believe now, that a minor role adjustment is warranted.

Instead, the Court considered all of the facts specific to Mann in its evaluation of the Section 3553(a) factors.   It considered her unfortunate upbringing, her family ties, her medical issues, her prior addictions, and her immediate acceptance of responsibility when interviewed by law enforcement. It then balanced those facts against her substantial criminal history, her reprehensible conduct in the charged case, and her significant contributions to the success of a $31 million scheme to defraud individuals who were themselves in dire financial straits.   With all of this information at hand, the Court varied downward substantially from the Guidelines to concurrent terms of imprisonment of one year and one day — which, with contemplated credit for good behavior, will amount to just over ten months' imprisonment.   Stated simply, with or without a minor role reduction, the below-Guidelines sentence Mann received is the lowest sentence the Court would have imposed.

23

###### b.   There Is No Basis to Challenge the Loss Figure

Grounds One, Two, and Three of Mann's Section 2255 Motion all concern Amendment 794.   In Ground Four, by contrast, Mann challenges the loss figure advanced by the Probation Office and adopted by the Court:

> The Government was unable to prove the actual amount v. the inten[d]ed amount.   Due to this, the Judge adopted the figure based on the [Probation Office's] loss figure that was based sole[l]y on a very conclusory speculation that impacted the defendant's offense level.

(Motion 9).   While Mann terms this a challenge to the "Restitution Amount," the Court determined at the May 19 telephonic proceedings that it was not imposing restitution.   Accordingly, the Court will construe the challenge as one to the Court's calculation of Mann's offense level or to its assessment of a forfeiture figure.   Both fail.

The Court understood from the Government that it was not seeking restitution, in the Court's words, "in light of the many victims in this case and the difficulty in ascertaining the sum total and the identities of all these victims."   (May Sent. Tr. 3).   However, the inability to ascertain damage amounts per victim for restitution purposes does not equate to an inability to identify the losses caused by the scheme for Guidelines purposes.   On that issue, the Government has consistently represented the figure to be approximately $31 million (*see* PSR ¶ 16; Gov't Sentencing Submission 1), and Mann's contribution to that figure as falling within the range of $200,000 to $400,000 (*see* PSR ¶ 6; Gov't Sentencing Submission 3).   Additionally, Mann

24

stipulated in the Plea Agreement to a loss figure of between $200,000 and $400,000 (*see* PSR ¶ 6; Plea Agmt. 2), and did not object to the Probation Office's assessment of a loss figure of $360,000 (PSR ¶ 25; April Sent. Tr. 3-4). The Court was entitled to use those figures in determining the applicable Guidelines enhancement under U.S.S.G. § 2B1.1(b)(1).   *See United States* v. *Rigas*, 583 F.3d 108, 120 (2d Cir. 2009) ("In calculating the amount of loss under the Guidelines, a sentencing court 'need only make a reasonable estimate of the loss.'" (quoting U.S.S.G. § 2B1.1, comment. n.3(C))); *United States* v. *Fagans*, 406 F.3d 138, 142 (2d Cir. 2005) (observing that facts in a Presentence Investigation Report to which no objection is raised may be viewed as admitted).[6]

## CONCLUSION

Mann has identified no basis for overcoming her knowing and voluntary waiver and no error at her sentencing, much less an error of jurisdictional or constitutional proportions that can be addressed in a motion under 28 U.S.C. § 2255.   Mann's Motion is therefore DENIED.   A certificate of appealability shall be not granted, because Mann has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. *Hoffler* v. *Bezio*, 726 F.3d 144, 154 (2d Cir. 2013); *Tankleff* v. *Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998); *Rodriquez* v. *Scully*, 905 F.2d 24, 24 (2d Cir.

---

[6]     Relatedly, to the extent Mann is contesting the forfeiture figure of $180,993.20, it is the figure to which she agreed in her Consent Order with the Government.   (Dkt. #165).

1990).   The Court additionally certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.   *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).   The Clerk of Court shall close the case docketed at No. 16 Civ. 7556 (KPF).

SO ORDERED.

Dated:        October 11, 2016
              New York, New York

KATHERINE POLK FAILLA
United States District Judge

**By First Class Mail To:**

Jessica Mann
Reg. No. 13953-055
FCI Hazelton
Federal Correctional Institution Satellite Camp
Secure Female Facility
P.O. Box 3000
Bruceton Mills, WV   26525